IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NEBRASKA COWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:08-CV-744-WKW[WO] |
| | ) | |
| VOLVO GROUP NORTH AMERICA, | ) | |
| INC., d/b/a VOLVO TRUCKS NORTH | ) | |
| AMERICAN, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

Before the court is Plaintiff Nebraska Coward's ("Coward") Motion to Remand (Doc. # 12). In that motion, Mr. Coward seeks remand of this action to the Circuit Court of Bullock County, Alabama, for lack of diversity jurisdiction, 28 U.S.C. § 1332(a). He asserts that complete diversity of citizenship does not exist because RCS Ambulance Services ("RCS") is a non-diverse Defendant. The motion is accompanied by a brief. (Doc. # 15.) The Goodyear Tire & Rubber Co., Veyance Technologies, Inc., and Volvo North America, Inc. (collectively "Defendants"), as the removing Defendants, filed a response in opposition to the motion (Doc. # 16), arguing that, in the absence of fraudulent joinder, complete diversity exists. Mr. Coward filed a reply. (Doc. # 18.) For the reasons to follow, the motion is due to be granted.

## II. STANDARD OF REVIEW

"[F]ederal courts have a strict duty to exercise the jurisdiction conferred on them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). However, "[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Thus, with respect to cases removed to this court pursuant to 28 U.S.C. § 1441, the law of the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear. "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095.

## III. BACKGROUND

The following background is pertinent to RCS, the allegedly fraudulently-joined Defendant. On December 12, 2005, Mr. Coward, who worked as a tractor-trailer driver, was seriously injured when his hand became pinned between the frame and axle of his tractor.[1] (Compl. ¶ 10 (Ex. to Pet. Removal (Doc. # 1)).)  With his other hand, Mr. Coward was able to reach his radio, which was in his shirt pocket, and call for an ambulance. (Compl. ¶ 11; Pl. Dep. 97, 104-05 (Ex. B to Mot. Remand Br. (Doc. # 15).)  In response to this call, RCS arrived at the accident scene and transported Mr. Coward to Troy Regional Medical Center in Troy, Alabama. (Compl. ¶ 11; Pl. Dep. 108-09.)  Because Troy Regional Medical Center

---

[1] Seven miles outside of Brundidge, Alabama, Mr. Coward pulled off on the side of the highway because a gauge located inside the tractor indicated that the tractor's air pressure was dropping. (Pl. Dep. 81-82.)  At the time of the accident, he was underneath the tractor attempting to find the source of the air leak. (Pl. Dep. 85.)

was not equipped to treat Mr. Coward's injury, Mr. Coward was transported to Southeast Alabama Medical Center in Dothan, Alabama. (Compl. ¶ 11; Pl. Dep. 108-112.)

In Count Four of his Complaint,[2] Mr. Coward brings a claim against RCS under the Alabama Medical Liability Act ("AMLA"), *see* Ala. Code §§ 6-5-480 to -488; Ala. Code §§ 6-5-541 to -552. Mr. Coward alleges that RCS "negligently and/or wantonly failed to provide [him] with the professional medical services, care and treatment that an ambulance service, EMT/EMS, nurse, or other similarly situated health care provider within the medical community possessing and exercising ordinary and reasonable medical knowledge and skills would have provided." (Compl. ¶ 39.) Mr. Coward says that RCS breached the standard of care because it failed to assess, diagnosis and relay to Troy Regional Medical Center the severity of his injuries, failed properly to "clean, sanitize and/or stabilize" his injuries at the scene, and failed to transport Mr. Coward to a medical facility equipped to treat his injuries. (Compl. 17.) As a consequence of RCS's alleged negligence, Mr. Coward avers that there was a delay in his diagnosis and treatment and that the delay, in addition to the inadequate treatment he received while under RCS's care, resulted in infection and gangrene in his hand and, ultimately, the amputation of his hand. (Compl. 19.)

Defendants say they first learned that RCS was fraudulently joined after taking Mr. Coward's and Dr. O. H. Chitwood's ("Chitwood") deposition on August 12, 2008, and August 13, 2008, respectively. Dr. Chitwood was the surgeon who performed multiple

---

[2] The Complaint originally was filed on December 20, 2007, in the Circuit Court of Bullock County, Alabama.

surgeries on Mr. Coward's injured hand, including its amputation, and provided post-surgery treatment to Mr. Coward. (Pet. Removal. ¶ 3; Chitwood Dep. 8-16 (Ex. C to Mot. Remand Br.).) Dr. Chitwood is an "orthopaedic hand surgeon" and is board-certified in orthopaedic surgery. (Chitwood Dep. 7, 34.)

On September 11, 2008, Defendants removed this case on the basis of diversity jurisdiction, *see* 28 U.S.C. §§ 1332(a), 1441(b). (Pet. Removal 2.) As the ground for removal, Defendants assert that RCS, although an Alabama citizen, is fraudulently joined to this action and that, therefore, its "citizenship should be ignored for diversity purposes," and that, without RCS, complete diversity of citizenship exists. (Pet. Removal ¶¶ 3, 5.) Excerpts from the deposition testimonies of Dr. Chitwood and Mr. Coward were submitted with the removal petition as evidentiary support for the fraudulent joinder argument. (Exs. A & G to Pet. Removal.)

On October 8, 2008, Mr. Coward filed a motion to remand, asserting that RCS "is a non-diverse defendant that has not been fraudulently joined" and that, therefore, "diversity of citizenship does not exist in this case." (Mot. ¶ 3 (Doc. # 12).) Mr. Coward also filed excerpts from his and Dr. Chitwood's deposition testimonies in support of his position. (Exs. B & C to Mot. Remand. Br.)

## IV. DISCUSSION

Defendants assert that Mr. Coward "is unable to produce any evidence to support or substantiate his claims against RCS" because Dr. Chitwood testified that RCS "did not

deviate from any generally accepted standard of care" and that "[t]he actions of RCS did not cause or contribute to [Mr. Coward's] injuries," and because Mr. Coward's deposition testimony establishes that he cannot remember much of what occurred once RCS arrived on the scene. (Resp. 5 (Doc. # 16).) Defendants assert that, "[t]o support his Motion to Remand, Mr. Coward was obligated to offer or produce evidence that would support his contentions that RCS deviated from the generally recognized standard of care, and that such deviation(s) caused or contributed to his injuries." (Resp. 8.) According to Defendants, Mr. Coward's "failure to do so leaves the testimony of Dr. Chitwood as the *only* evidence" available to Mr. Coward to support his Motion to Remand. (Resp. 8.)

Moving to remand this case to state court, Mr. Coward argues that Defendants have not met their heavy burden of proving that RCS is fraudulently joined to this action (Mot. Remand Br. 1), and that Defendants impermissibly have shifted to him the burden of proof on removal (Reply 6 (Doc. # 18)). Mr. Coward points out that Defendants "rely solely upon the testimony" of Mr. Coward and Dr. Chitwood, but argues that their testimony does not foreclose the possibility that he can recover against RCS under the AMLA. (Mot. Remand Br. 8.) Rebutting Defendants' argument that Dr. Chitwood's testimony establishes no breach of the standard of care by RCS, Mr. Coward points to Dr. Chitwood's deposition testimony that, "without [RCS's] records," he (Dr. Chitwood) did not "have an opinion one way or the other as to whether the paramedics mistreated Mr. Coward." (Mot. Remand Br. 11 (citing Pl. Dep. 45-46).) In any event, Mr. Coward asserts that Defendants have not demonstrated

5

that Dr. Chitwood is a "similarly situated [health care] provider as required by the [AMLA]." (Mot. Remand Br. 12.) Mr. Coward also contends that, on the issue of whether there is a proximate causal connection between RCS's acts or omissions and his injuries, Dr. Chitwood's testimony does not address all of the Complaint's allegations against RCS for negligence. (Reply 3.)

### A. Fraudulent Joinder

If non-diverse parties are fraudulently joined to an action, their citizenship will not be considered for purposes of determining diversity jurisdiction. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 117 (5th Cir. 1979) (per curiam).[3] The Eleventh Circuit recognizes three forms of fraudulent joinder. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533, 1540 (11th Cir. 1993)). The one relevant to this case is fraudulent joinder "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Id*.

The removing party bears the burden of proving fraudulent joinder, and the burden is "heavy." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal quotation marks and citation omitted). "[A]ll factual issues and questions of controlling substantive

---

[3] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit prior to October 1, 1981.

6

law" must be viewed in the light most favorable to the plaintiff. *Coker*, 709 F.2d at 1440-41; *accord Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the Complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007). Although for purposes of determining fraudulent joinder, courts may consider affidavits and deposition transcripts submitted by either party, in addition to the plaintiff's pleadings at the time of removal, *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005), "the jurisdictional inquiry must not subsume substantive determination," *Crowe*, 113 F.3d at 1538 (internal quotation marks and citation omitted). Courts must be "certain" of their jurisdiction and "are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id.* (internal quotation marks and citation omitted).

  **B.** **Removal Burden**

  Defendants assert that, to avoid removal, it was incumbent upon Mr. Coward to present evidence sufficient to support the elements of his AMLA claim against RCS. (Resp. 5.) This argument, however, ignores the threshold question of what Defendants must prove to invoke diversity jurisdiction in a removal action based upon a fraudulent joinder theory.

  A plaintiff who disputes removal made on the basis of fraudulent joinder does not have the burden of proving that § 1332's complete diversity requirement is lacking; instead,

the removing defendant bears the "heavy" burden of proving fraudulent joinder, *Crowe*, 113 F.3d at 1538 (internal quotation marks and citation omitted).  In *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003), the Fifth Circuit concluded that a motion to remand based upon a fraudulent joinder argument should not have been granted on the basis that the plaintiff "'ha[d] failed to present any evidence in support of a claim against [the resident defendant].'"  *Id.* at 649 (citation omitted).  That opinion aptly explains why Defendants' argument in this case is flawed:  Where "the defendant has the burden of establishing fraudulent joinder and the plaintiff can clearly state a claim upon which relief can be granted as to the non-diverse defendant, the lack of substantive evidence as to the non-diverse defendant does not support a conclusion that he was fraudulently joined." *Id.* at 650.  "In order to establish that [the resident defendant] was fraudulently joined, the defendant must put forward evidence that would negate a possibility of liability on the part of [the resident defendant]." *Id.*; *see also Legg*, 428 F.3d at 1324 (The affidavit from the allegedly fraudulently-joined drug representative that "he never promoted or sold Redux" demonstrated that it was not possible for the plaintiffs to establish a cause of action against the sales representative for allegedly negligently misrepresenting that Redux was a drug that was safe to ingest; the plaintiffs did not submit contrary evidence, and, thus, removal was proper.).

Here, there is no argument that the allegations of the Complaint fail to state a claim upon which relief can be granted against RCS under the AMLA.  Rather, Defendants say, "it is the fact that [Mr. Coward] cannot offer any evidence to support any of the allegations

against RCS in his Complaint that makes the joinder of RCS fraudulent." (Resp. 3 n.4.) To the extent that Defendants have attempted to shift the burden of disproving fraudulent joinder to Mr. Coward, the court rejects that argument based upon the clear and persuasive reasoning of *Travis*.[4]

### C.  AMLA

Applying AMLA's standards in light of Defendants' burden on removal, the court turns to whether Defendants have met that burden by submitting evidence demonstrating that Mr. Coward has no possibility of recovery against RCS under the AMLA. An AMLA claim requires proof of "1) the appropriate standard of care, 2) [the health care provider's] deviation from that standard, and 3) a proximate causal connection between the [health care provider's] act or omission constituting the breach and the injury sustained by the plaintiff." *Giles v. Brookwood Health Servs., Inc.*, ___ So. 2d ___, 2008 WL 2554287, at *11 (Ala. 2008). With exceptions not argued in this case, expert testimony is required to establish that a defendant health care provider failed to meet the standard of care, but "such expert

---

[4] Defendants also suggest that, to avoid removal, Mr. Coward was trying to stall the discovery process in state court by answering certain discovery requests with assertions that "discovery is incomplete," that his "investigation is ongoing," and that answers are "subject to expert testimony." (Resp. 5 n.7; *see also* Resp. 8 n.10.) They, however, have not cited any authority that, on the basis of these discovery responses viewed in the context of the entire record, they are excused from meeting their burden of proving fraudulent joinder. Indeed, in *Travis*, a similar argument was rejected. *See* 326 F.3d at 649-50 (holding that the plaintiff's discovery responses that at that time she did not have an expert witness or all facts necessary to her claim should not have been construed "as admissions that she had no factual basis or evidence in support of her claims against [the resident defendant]"); *cf. Sabo v. Dennis Techs., LLC*, No. 07-cv-283, 2007 WL 1958591, at *4 (S.D. Ill. July 2, 2007) (rejecting post-removal discovery on fraudulent misjoinder issue and observing that "in cases filed in state court in which the existence of federal jurisdiction is doubtful, use of discovery in state court to establish the prerequisites for the exercise of federal jurisdiction before removal furthers the congressional goal of fostering judicial economy").

9

testimony is allowed only from a 'similarly situated health care provider.'" *Holcomb v. Carraway*, 945 So. 2d 1009, 1012 (Ala. 2006). Under the AMLA, a "similarly situated health care provider" is defined as one who: "(1) [i]s licensed by the appropriate regulatory board or agency of this or some other state[;] (2) [i]s trained and experienced in the same discipline or school of practice[;] [and] (3) [h]as practiced in the same discipline or school of practice during the year preceding the date that the alleged breach of the standard of care occurred." Ala. Code § 6-5-548(b) (brackets added). The plaintiff also must "'prove by expert testimony that . . . the breach proximately caused the plaintiff's injury.'" *Giles*, ___ So. 2d at ___, 2008 WL 2554287, at *11 (quoting *Univ. of Ala. Health Servs. Found. v. Bush*, 638 So. 2d 794, 798 (Ala. 1994)).

### 1. Similarly Situated Health Care Provider

Defendants contend that Dr. Chitwood's testimony affirmatively establishes that RCS did not breach the standard of care in its treatment of Mr. Coward and, thus, that it is not possible for Mr. Coward to recover against RCS under the AMLA.[5] Defendants,

---

[5] In *Billingsley v. McWhorter Farms, LLC*, No. 3:06cv795, 2007 WL 1219724 (M.D. Ala. April 25, 2007) (Watkins, J.), an action removed on the basis that an ambulance service was fraudulently joined on an AMLA claim, this court noted the absence of "any published Alabama opinion holding that an action against an ambulance service is governed by the AMLA." *Id.* at *3; *see also id.* at *2 ("Noticeably absent in the [AMLA] and precedent is the inclusion of ambulance services."). As observed in *Billingsley*, "This appears to be an issue of first impression, and because Alabama law is unsettled, this case is one that should be remanded." *Id.* (citing *Florence*, 484 F.3d at 1293 (Remand is appropriate when state law is unsettled as to an issue in the complaint.)). The issue still appears to be novel, but has not been raised by either party. Defendants, however, implicitly assume the AMLA's applicability to RCS in making their arguments, and the court therefore will do the same so that Defendants' arguments for removal can be addressed.

however, have not argued, or cited any authority establishing, that Dr. Chitwood is a similarly situated health care provider.

Although not analogous on all points, the decision in *Estate of Bradley ex rel. Bradley v. Mariner Health, Inc.*, is instructive on the requirements for establishing a similarly situated health care provider. *See* 315 F. Supp. 2d 1190 (S.D. Ala. 2004), *aff'd* 138 F. App'x 298 (11th Cir. 2005). In that AMLA lawsuit, one of the determinative liability issues was "whether [the defendants] exercised such reasonable care, skill and diligence as other nursing homes would ordinarily exercise under similar circumstances[.]" *Id.* at 1194. Applying § 6-5-548(b), the court opined that, because the "standard of care allegedly breached by Defendants [was] 'hands-on' nursing care and treatment, whether by a registered nurse, licensed practical nurse, or certified nursing assistant, in a nursing home setting from mid-1998 to mid-1999," *id.* at 1195, a similarly situated health care provider would be "someone trained and experienced in the provision of 'hands-on' nursing care and treatment in a nursing home, [and] . . . someone who has practiced such 'hands-on' care during the year preceding mid-1998 up and until mid-1999," *id.* The plaintiff offered expert testimony from a physician that the nursing home breached the standard of care to one of its patients, but the physician was not a nurse, had never practiced as a nurse, had no education or experience in nursing, and did not hold himself out as an expert in nursing. *Id.* at 1196. The physician also had not cared for patients in a nursing home, made rounds in a nursing home or supervised the provision of care in a nursing home. *Id.* The court concluded on those facts that the

physician was not a similarly situated health care provider pursuant to § 6-5-548(b) of the AMLA and, thus, that he could not testify as to the standard of care allegedly breached by the defendants. *Id.* at 1197.

Here, as pleaded in the Complaint, the standard of care that RCS allegedly breached is not care provided by an orthopaedic hand surgeon, or even by a physician. Rather, it is care provided by an emergency medical technician ("EMT") or other comparable provider trained to respond in a medical emergency (typically through a 911 dispatch) to provide urgent care to an injured person while that injured person is in transport to a medical facility. (*See* Compl. ¶ 39.)

Defendants offer no testimony from Dr. Chitwood that, during the year preceding December 12, 2005, *see* § 6-5-548(b), he practiced as an EMT or comparable health care provider. There likewise is no evidence that, during the relevant time frame, Dr. Chitwood was involved in the transport of medically-injured patients, supervised the provision of care for medically-injured patients who were being transported in an ambulance or other emergency vehicle to a medical facility, or supervised EMTs or other similar health care providers concerning the location of transport. There also is no testimony from Dr. Chitwood that he holds himself out as an expert concerning the standard of care allegedly breached by RCS. Rather, Dr. Chitwood holds himself out as a board-certified orthopaedic hand surgeon. (Chitwood Dep. 7 & 34.)

On these removal facts, there is an absence of evidence that Dr. Chitwood is a "similarly situated health care provider" within the meaning of § 6-5-548(b) of the AMLA. Defendants, therefore, cannot rely on Dr. Chitwood's testimony to demonstrate that there is no possibility that Mr. Coward can establish that RCS breached the standard of care in its treatment of Mr. Coward.

### 2. *Proximate Cause*

Defendants' reliance on Dr. Chitwood's testimony as evidence establishing that any negligent conduct by RCS did not proximately cause Mr. Coward's injuries (Resp. 12-15) is problematic for at least two reasons. First, at its foundation, Dr. Chitwood's testimony on proximate cause (or rather the lack thereof) is grounded upon Dr. Chitwood's opinion that RCS did not breach the applicable standard of care. As stated, however, Defendants have not demonstrated that Dr. Chitwood is qualified under the AMLA to render that opinion. Nor have they demonstrated that, assuming a breach, Dr. Chitwood would have reached the same conclusion as to the absence of proximate cause.

Second, Defendants have not dispelled the possibility of recovery on all theories of negligence set out in the Complaint. Defendants cite Dr. Chitwood's testimony for the proposition that "the delay occasioned by" RCS's decision to transport Mr. Coward to Troy Regional Medical Center "did not exacerbate Mr. Coward's injuries or affect in any way the treatment of those injuries." (Resp. 15.) It may be true that the delay in treatment is Mr. Coward's main theory of negligence against RCS, but, based upon a liberal construction of

the Complaint's theories, *Coker*, 709 F.2d at 1440-41, it cannot be ruled out that the alleged delay is the only theory of negligence against RCS. For example, Mr. Coward also includes allegations challenging the adequacy of RCS's provision of stabilizing emergency care during transport. (Compl. 17.) At the very least, that theory of negligence remains an arguable one under the AMLA. *See Crowe*, 113 F.3d at 1538 (Courts "are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." (internal quotation marks and citation omitted)).

### 3.  *Mr. Coward's Testimony as a Basis for Removal*

Defendants cite *Sudduth v. Equitable Life Assurance Society*, No. 07-0436, 2007 WL 2460758 (S.D. Ala. Aug. 27, 2007), a removal action, for the proposition that a plaintiff "ha[s] no reasonable possibility of recovery against a non-diverse defendant when [he] admit[s] in his deposition that he ha[s] no memory of the events underlying . . . his claims against the non-diverse defendant." (Resp. 7-8.) In *Suddoth*, the removed complaint contained a fraudulent concealment claim against a resident insurance agent. 2007 WL 2460758, at *3. The removing corporate defendants submitted an affidavit from the allegedly fraudulently-joined agent, who attested that he "had no involvement of any kind with the plaintiff" regarding the policy at issue, as well as a declaration and other materials establishing that a different agent altogether sold the policy to the plaintiff. *Id.* At that point, in the face of affirmative evidence that demonstrated no possibility of a claim for fraudulent concealment against the agent and that sustained the defendants' fraudulent joinder burden,

the plaintiff could not defeat removal by testifying that he had "no memory" of his conversations with the resident agent. *Id.* at *5. The plaintiff's testimony was insufficient because "only [the plaintiff] and [the resident agent] could testify as to what transpired between them, [the agent] denie[d] having any conversations with the plaintiff about an overhead policy, and the plaintiff ha[d] no memory of what [the agent] did or did not say." *Id.* (brackets added). The joinder of the resident agent as to the concealment claim, therefore, was fraudulent. *Id.*

*Suddoth* is distinguishable. For one thing, it did not involve an allegation of fraudulent joinder on an AMLA claim. For another, Defendants have not demonstrated that the fraudulent joinder analysis as to Mr. Coward's AMLA claim rises or falls solely on whether Mr. Coward can recall the details of the care he received from RCS. As Mr. Coward points out, an AMLA "plaintiff is often not alert at the time of the [allegedly] negligent conduct, and thus cannot testify as to the defendant's conduct." (Reply 6 (brackets added).) By pointing out that Mr. Coward cannot remember what care he received from RCS, Defendants have not foreclosed the possibility that facts pertaining to the care RCS provided cannot be garnered from other sources. In *Suddoth*, to the contrary, the defendants put the plaintiff at an evidentiary dead end by presenting clear testimony from the only other party to the conversation, and that testimony clearly refuted the plaintiff's allegations of fraudulent concealment. Here, differently than the defendants in *Suddoth*, Defendants have not

15

submitted any evidence demonstrating that RCS did not breach the standard of care. On that issue then, there is no evidence that Mr. Coward must negate to defeat removal.

## V.  CONCLUSION

Controlling precedent requires Defendants to bear the weighty burden of establishing fraudulent joinder.  *See Crowe*, 113 F.3d at 1538.  That burden has not been met. Accordingly, it is ORDERED that:

(1) Mr. Coward's Motion to Remand (Doc. # 12) is GRANTED;

(2) This case is REMANDED to the Circuit Court of Bullock County, Alabama; and

(3) The Clerk of the Court is DIRECTED to take appropriate steps to effect the remand.

DONE this 6th day of April, 2009.

/s/  W.  Keith Watkins
UNITED STATES DISTRICT JUDGE